CORNELIA PHELPS *vs.* BENJAMIN FITCH & others.

Suffolk.   December 3, 1900. — April 3, 1901.

Present: HOLMES, C. J., KNOWLTON, LATHROP, HAMMOND, & LORING, JJ.

An agreement of compromise, made between the sole residuary legatee and executor under a contested will, of the first part, and the sole next of kin and certain family friends and servants of the testatrix claiming under former wills, of the second part, provided, that the will should be admitted to probate, and that the residue should be divided equally between the party of the first part and the parties of the second part, and that the party of the first part should "at the expiration of thirty days after the final allowance and probate of said will . . . convey, assign and transfer by proper instruments in writing . . . one half of all his interest in and to said estate, as residuary devisee and legatee under said will, to and among said parties of the second part to be held by them respectively in the same manner and in the same shares or proportions as the said one half of the said residue is hereinafter stipulated to be paid to them respectively." The provision for the distribution of half of the residue among the parties of the second part was on the basis that such one half would amount to $30,000. Payments amounting to $16,500 were to be made to the parties of the second part other than the next of kin, and the next of kin was to be paid $13,500 "and also the excess of said one half said rest, residue and remainder over and above thirty thousand dollars." There was also the following provision: "If, however, said one half of said rest, residue and remainder shall not amount to thirty thousand dollars, then, and in that event, each and every payment hereinbefore to be made out of said one half, shall be abated *pro rata.*" The will having been allowed in accordance with the agreement, the executor, party of the first part, two years and a half later filed his final account by which it appeared that one half the net residue was more than $40,000, and that the property of the estate had increased in value more than $10,000 since the allowance of the will. It appeared, however, that there had been no increase in value after the expiration of two years from the time of the executor's appointment. *Held*, that by the true construction of the agreement of compromise the next of kin was entitled to the balance of one half the net residue of the estate after paying to the other parties of the second part the sums specified in the agreement to be paid to them, that the purpose of the conveyance to be made by the residuary legatee thirty days after the allowance of the will was to give to the parties of the sec-

ond part one half of his interest as residuary legatee and the right to receive their respective shares thereof when the time for distribution should arrive, and that the executor was entitled to the ordinary period of two years in which to pay the debts and legacies and ascertain the residuum, and, the increase in the value of the property all having occurred within that time, the parties of the second part other than the next of kin had no interest in it, and that the provision in the agreement, that in case one half the net residue should turn out to be less than $30,000 all the payments to the parties of the second part should abate ratably, did not affect the construction of the express provision, that in case one half turned out to be greater than $30,000 the next of kin was to have "the excess." *Held, also,* that the parties of the second part other than the next of kin were not entitled to interest after the expiration of one year from the death of the testatrix on the sums to be paid to them under the agreement, since these sums were paid not as legacies but as part of the residue, and the money was not wrongfully detained.

BILL IN EQUITY by the sole heir at law and next of kin of Elizabeth G. Phelps, deceased, to enforce an agreement of compromise relating to the will of said Elizabeth, under which the defendant Fitch was executor and residuary legatee, filed September 2, 1899. .

The case came on to be heard upon a master's report, before *Knowlton,* J., who, at the request of the parties, reserved the case for the consideration of the full court, such decree to be entered as law and justice might require.

The allegations of the bill were as follows:

1. That the plaintiff, Cornelia Phelps, an insane person bringing her bill by Herbert · L. Harding, her guardian, is the sole heir at law and next of kin of the late Elizabeth G. Phelps, who died on October 15, 1896, leaving an estate of about $100,000 in value.

2. That upon the death of Elizabeth G. Phelps, the defendant Benjamin Fitch offered for probate in the Probate Court for the county of Suffolk an instrument in writing purporting to be the will of the said Elizabeth, by which the greater part of her estate was given to Fitch as residuary legatee and devisee, and in which Fitch was named as executor.

3. That the plaintiff was not then under guardianship, and the allowance of the will was contested by her through John S. Patton, one of the defendants, who was then acting as her attorney. [The will was also contested by the defendant John B. Manning and one Jane Dignan, claiming under former wills of the deceased and also represented by Patton.]

4. That said contest was settled and disposed of by an agreement of compromise in writing, dated January 6, 1897, between Fitch, as party of the first part, and the plaintiff, the defendant Patton and others, parties of the second part, a copy of which was annexed to and made part of the bill and marked A.

5. That by this agreement it was provided in substance that the will should be allowed; that Fitch should be appointed executor thereof, and that the residue of the estate should be divided into two equal portions, one portion to be given to Fitch in settlement of all his claims under the will, and the other portion to be given to the plaintiff, after certain specific payments had been made from said second portion to the various other parties named in the agreement.

6. That the parties to whom specific amounts were to be paid, under the agreement, out of the second portion of the rest and residue were, with the exception of Patton, family friends or servants of Elizabeth G. Phelps, and the payment to Patton of the sum of $6,000 provided for by the agreement was in payment of his fees as counsel for the plaintiff in the matter of the contest of the will.

7. That upon the execution of the agreement of compromise and in pursuance thereof, the plaintiff withdrew her opposition to the will, which was thereupon, on January 21, 1897, duly allowed, and Fitch was on the same day appointed executor thereof, and duly qualified as such executor.

8. That on November 9, 1897, the plaintiff was adjudged insane, and was placed under the guardianship of Herbert L. Harding aforesaid, by decree of the Probate Court for the county of Middlesex.

9. That Fitch filed in the Probate Court his first account, and also his second and final account as executor of Elizabeth G. Phelps, and it appeared by the last account that the rest and residue of her estate, within the meaning of the agreement of compromise, amounted to $83,957.88, and twelve shares of stock of the Michigan Central Railroad Company, and accordingly one half of the rest and residue largely exceeded the sum of thirty thousand dollars [named in the agreement of compromise].

10. That the plaintiff and Patton appealed from the decree of

the Probate Court allowing the account; and thereupon Fitch, in consideration of the withdrawal of their appeals by the plaintiff and Patton, paid to the plaintiff $23,834.94, to Patton $6,000, and to other persons named in the agreement as follows: To Kate Lincoln $1,000; to Maggie Jones $2,500; to John B. Manning $1,000; to Mary M. Blake $1,000; and to the estate of Jane Dignan, late of New York, deceased, $640, these payments being in full satisfaction of all amounts due the parties, except the plaintiff, under the agreement; but retained in his own hands and possession the sum of $6,000, and also six shares of the capital stock of the Michigan Central Railroad Company, as the balance of the sum due the parties of the second part from the second portion of the rest and residue under the agreement.

11. That Jane Dignan was alive at the time the agreement of compromise was made, and was one of the parties of the second part thereof, and was entitled thereunder to $40 a month for life, to be paid out of the interest and principal of a sum of $4,000, the principal, or what remained thereof, to go to the plaintiff upon the decease of Dignan. That Dignan is now dead, and her estate has received $640 in full satisfaction of her life interest, and therefore has no further interest in or under the agreement of compromise.

12. That one Harriet M. Whitcomb was also one of the parties of the second part to the agreement of compromise, but that her interest was confined solely to the furniture, pictures, jewelry, china and family bric-a-brac of the late Elizabeth G. Phelps, and that she has received these, and is no longer interested in the agreement.

The material portions of the agreement of compromise above referred to as marked A are as follows:

"Now, therefore, in consideration of the waiver of all objections to the allowance of said will dated January 25th, 1894, by all the parties hereto of the second part, and of the mutual agreements and undertakings herein set forth, and for the purpose of compromising, adjusting and settling the respective claims of all the parties hereto to a share in the estate of said Elizabeth G. Phelps, it is hereby agreed by and between said Benjamin Fitch, party of the first part, and John B. Manning formerly of said Boston, now of New York, Harriet M. Whitcomb, Maggie Jones,

John S. Patton, Jane Dignan and Kate Lincoln, all of said Boston, Mary M. Blake of Philadelphia, and said Cornelia Phelps, who constitute the parties of the second part, that said instrument dated January 25th, 1894, shall be proved and allowed as and for the last will of said Elizabeth G. Phelps; that said Fitch shall be appointed executor thereof; that said Fitch shall at the expiration of thirty days after the final allowance and probate of said will dated January 25th, 1894, convey, assign and transfer by proper instruments in writing duly executed and acknowledged, free from all right of dower and from all encumbrances made or suffered by him, one half of all his interest in and to said estate, as residuary devisee and legatee under said will, to and among said parties of the second part to be held by them respectively in the same manner and in the same shares or proportions as the said one half of the said residue is hereinafter stipulated to be paid to them respectively; and that after the payment according to law and said will, of all funeral charges, the cost of a suitable headstone, charges of administration and all debts against said estate, and all specific legacies named in said will, (including the legacy tax thereon), one half of all the rest, residue and remainder of said estate shall be paid to said Fitch, his heirs, executors, administrators and assigns, under the residuary clause in said will so allowed as aforesaid, in full satisfaction of all his claims against said estate, except for services rendered and disbursements made by him as executor of said will, and the remaining one half of all said rest, residue and remainder, (to be conveyed, assigned, and transferred by him as aforesaid), shall be paid to the parties of the second part, their respective heirs, executors, administrators and assigns, as follows: to said John B. Manning, one thousand dollars; to said Harriet M. Whitcomb, so much of the household furniture, pictures, ornaments, jewelry, china, bric-a-brac and other articles of personal property now in the house No. 49 Allen Street in said Boston, and belonging to said estate, as she may select, not exceeding at its appraised value, one thousand dollars, to be by her distributed to and among the friends of said Elizabeth G. Phelps, as she, the said Harriet M. Whitcomb, may designate; to said Maggie Jones, twenty-five hundred dollars; to said John S. Patton four thousand dollars in trust to pay to said Jane Dignan in equal

monthly instalments during her natural life the income thereof
and so much of the principal as shall both interest and principal
together amount to forty dollars per month, said monthly pay-
ments to date from October 13th, 1896; and upon her decease,
to pay the balance of said principal then remaining, to said Cor-
nelia Phelps, her heirs, executors, administrators and assigns,
free from all trusts; to said Kate Lincoln, one thousand dollars;
to said Mary M. Blake, one thousand dollars; to said John S.
Patton, six thousand dollars; and to said Cornelia Phelps, thir-
teen thousand and five hundred dollars, and the difference be-
tween one thousand dollars and the value of the articles which
said Harriet M. Whitcomb may select as above provided, in case
such value shall at their appraisal, be less than one thousand
dollars, and also the excess of said one half said rest, residue and
remainder over and above thirty thousand dollars.

"If, however, said one half of said rest, residue and remainder
shall not amount to thirty thousand dollars, then, and in that
event, each and every payment hereinbefore to be made out of
said one half, shall be abated *pro rata.*"

The justice made the following findings of fact:

"I find all the averments of the plaintiff's bill to and includ-
ing the eighth paragraph to be true. I find also the eleventh
and twelfth paragraphs to be true. Fitch, executor, filed in
the probate court his first, and also his second and final, account
as executor of the will of Elizabeth G. Phelps, by which it ap-
peared that the rest and residue of the estate within the mean-
ing of agreement A was a sum differing not much from the sum
stated in the ninth paragraph of the bill, with twelve shares of
stock as therein stated, and one half of said rest and residue
largely exceeded thirty thousand dollars. Appeals were taken
from the decree of the probate court allowing this final account,
as stated in the tenth paragraph of the bill, and thereupon the
parties settled their dispute in regard to the amount to be ac-
counted for by Fitch, and the appeals were withdrawn, and it
was agreed by all the parties that the amount to be accounted
for on July 18, 1899, as one half of said rest and residue was
$41,978.94 in money, together with six shares of the capital stock
of the Michigan Central Railroad Company, after the delivery
to Harriet M. Whitcomb of the furniture and other articles to

which she was entitled.   Thereupon on that day he made payments as alleged in the tenth paragraph of the plaintiff's bill, including the payments previously made to the estate of Jane Dignan, amounting in all to $35,978.94, and retained in his hands for future payments to such of said parties as should be entitled thereto, the sum of $6,000 and six shares of the stock of the Michigan Central Railroad Company.   Afterwards he paid into court said sum of $6,000 with $40 interest accrued thereon.

" The income and dividends received by said executor from the estate from February 21, 1897, to May 12, 1899, exceeded $5,000, and the net increase in value of said estate during the same time by reason of appreciation in the market value of the securities belonging to it, and gains on sale of the same, accounted for by the executor, exceeded $10,000.

" I found that the parties to this suit other than Fitch had vested interests in this rest and residue on February 21, 1897, in proportions thereafter to be determined according to the provisions of the agreement in regard to payment.   I found that the agreement contemplated the making of these payments at the expiration of two years from the appointment of the executor, viz., on February 21, 1899, and that the proportionate shares of the parties would depend on the amount of money to be divided among them at that time.   There was evidence that this amount was not the same as the amount held by the executor on July 18, 1899, when he made the payments, and I appointed a master to ascertain the amount as of the earlier date, and to determine the shares of the parties."

The will of Elizabeth G. Phelps contained the following: " I give and bequeath to my cousin Cornelia Phelps of Boston the sum of eight thousand dollars to be paid as soon as possible after my death.

" I give and bequeath to the following named societies, corporations and individuals the sums named after each, namely :

" To the Children's Mission to the Children of the Destitute in the City of Boston the sum of five thousand dollars.

" To the ' Benevolent Fraternity of Churches,' the sum of one thousand dollars.

" To my faithful servant, Jane Dignan, the sum of one thou-

sand dollars.   To Miss Maggie Jones, my other servant, the sum
of two hundred dollars.   To my dear friend, Mrs. Susan M.
Manning, the sum of two thousand dollars.   To Louisa A. daugh-
ter of my deceased friend Katie A. Burbank, the sum of one
thousand dollars.   To my friend Hattie A. Whitcomb the sum
of one thousand dollars.   To Mr. George O. Manning of Balti-
more in the State of Maryland, the sum of one thousand dollars.
The portrait of my deceased brother now in the parlor of my
residence on Allen Street, Boston, I give to said Hattie A.
Whitcomb.

" All the rest, residue and remainder of my estate real, per-
sonal or mixed or wherever situated or found, I give, devise and
bequeath to Benjamin Fitch of said Boston.   To hold to said
Fitch, and to his heirs and assigns forever.

" I nominate and appoint the said Benjamin Fitch to be the
executor of this my will and request that he be exempt from
giving surety on his official bond."

In the argument for the plaintiff it was pointed out that the
agreement of compromise began by an assumption that the resi-
due was $60,000, and divided exactly half of that sum among
the parties of the second part, as follows:

| | |
|---|---:|
| To John B. Manning . . . . . . . . | $1,000 |
| To Harriet M. Whitcomb, furniture, etc., up to | 1,000 |
| To Maggie Jones . . . . . . . . . . | 2,500 |
| To John S. Patton, in trust for Dignan for life | |
|   (with the remainder to the plaintiff) . . . | 4,000 |
| To Kate Lincoln . . . . . . . . . . | 1,000 |
| To Mary M. Blake . . . . . . . . . . | 1,000 |
| To John S. Patton . . . . . . . . . . | 6,000 |
| To Cornelia Phelps, the plaintiff . . . . . | 13,500 |
| | |
|     Total (*i. e.*, one half residue) . . . . | $30,000 |
|     Equal amount to Fitch . . . . . . | 30,000 |
| | |
|     Total (*i. e.*, assumed value of the whole | |
|       residue) . . . . . . . . . . | $60,000 |

The agreement, it was contended, then expressly provided
that, if the residue exceeded this assumed value, " the excess of

said one-half said rest, residue and remainder over and above $30,000 " should go to the plaintiff.

*J. S. Patton*, for the defendants.

*G. Hay, Jr.*, (*H. L. Harding* with him,) for the plaintiff.

LORING, J.   We are of opinion that by the true construction of the agreement of compromise the plaintiff is entitled to the balance of one half of the net residue of the estate left after paying to the defendants, other than the defendant Fitch, the sums specified in the agreement as the sums to be paid to them. For convenience we shall hereafter speak of the defendants other than Fitch as the defendants.

The agreement in question is a compromise of a controversy as to the validity of the will under which Fitch was residuary legatee; it provided that that will should be admitted to probate, and that Fitch's residue should be divided equally between Fitch, party of the first part, and the parties of the second part, who were the plaintiff (the sole heir and next of kin of the testatrix) and the defendants, who apparently had claims as creditors or legatees under previous wills.   The agreement was drawn on the basis that one half of the net residue would amount to $30,000; it provided that certain specified sums should be paid to the defendants, which sums, including the personal property to be taken by Harriet M. Whitcomb, amounted to $16,500; it then provided that $13,500 (which it is apparent is found by deducting from $30,000 the $16,500 just mentioned) should be paid to the plaintiff, " and also the excess of said one-half said rest, residue and remainder over and above thirty thousand dollars."   The conclusion that the plaintiff was to have all the increase in valuation of the estate in case it turned out that one half of the net residue of it was more than $30,000 is borne out by several facts.   In the first place, the plaintiff was " the only heir at law and next of kin " of the testatrix, while the defendants, who with the plaintiff constituted all the parties of the second part, for whom one half of the net residue was set aside in the agreement of compromise, were " family friends or servants " of the testatrix, that is to say, persons who had no claim to share in the estate proportionately with others.   Moreover it directly appears that the $6,000 to be paid to the defendant Patton were to be paid for services

rendered by him as an attorney at law; and it also appears that John B. Manning and Jane Dignan were persons "claiming under prior wills of said deceased." Again, it is expressly provided that, in case articles selected by Harriet M. Whitcomb did not amount, at their appraised valuation, to $1,000, the balance should go to the plaintiff.; and so again, in case the $4,000 paid to the defendant Patton in trust to pay Jane Dignan $40 a month during her natural life was not needed in whole for that purpose, "the balance of said principal" was to be paid to the plaintiff.

It is apparent, therefore, that the agreement of compromise undertook to provide for the distribution of this half of the residue on the assumption that it would amount to $30,000; acting on that assumption, it provided that specific sums were to be paid to the plaintiff and to the defendants, the amount to be paid to the plaintiff being the balance ascertained by deducting from $30,000 the amount found by adding together the sums to be paid to the defendants. It then provided for the contingency of this half amounting to more than $30,000, and the provision made was "the excess of said one half said rest, residue and remainder over and above thirty thousand dollars" should be paid to the plaintiff. It is apparent that all the interest the defendants had under the agreement of compromise was to be severally paid the respective sums mentioned therein, at the time when the payments should be due.

The defendants contend that the conveyance of one half the residue of the estate to be made by the residuary legatee, on the expiration of the time for an appeal from the decree of the Probate Court allowing the will, made them (the defendants) together with the plaintiff tenants in common of one half the residue as it then existed, and that they are entitled to share in the increase of the fund in the proportions in which they then held the fund as tenants in common; and that unless this meaning is given to this conveyance it is a nugatory act. But we are of opinion that whatever the increase of the value of the property during the time that it was to be held by the executor for the settlement of the estate might be, they were entitled to receive only the sum mentioned in the contract at the time when their share of the residue was to be paid over.

It is apparent that the purpose of the conveyance, which by the terms of the agreement of compromise was to be made by the residuary legatee in the case at bar on the expiration of the time for an appeal from the decree of the Probate Court allowing the will, was to give to the parties of the second part one half the net residue, the whole of which vested in Fitch as residuary legatee by the allowance of the will; and that this was the whole effect of this transfer to the plaintiff and to the defendants "to be held by them respectively in the same manner and in the same shares or proportions as the said one half of the said residue is hereinafter stipulated to be paid to them respectively"; it gave to the plaintiff and the defendants the right to their share of the cash or the securities constituting the residue of the estate when the time for distribution should arrive. It follows that all the interest the defendants had under the agreement and under the conveyance of one half the net residue provided for in the agreement, was to be paid the several sums mentioned, when the time for distribution of the residue came, and that time was not until the executor in the regular course of proceedings had an opportunity to pay the debts and specific legacies and to ascertain the residuum. This ordinarily would be at the expiration of two years from the time of his appointment. It appears that there was no increase in value of the property in the hands of Fitch after the expiration of two years. The question whether if there had been such an increase the defendants have such an interest in the property as to entitle them to share in it, does not arise in the case, and it is unnecessary to consider it.

The defendants also contend that the provision that in case one half the net residue turned out to be less than the $30,000, " each and every payment hereinbefore to be made out of said one half shall be abated *pro rata*," shows that the construction stated above is not correct. We do not think so, but on the contrary we think that that provision represents the trade which was made to cover that contingency, and does not affect the construction which we have given to the express provision that the plaintiff was to have the " excess," in case one half turned out to be greater than $30,000.

The defendants' contention that they are entitled to interest

on the sums to be paid to them remains to be disposed of. They contend that they are entitled to interest on these sums on the same principle on which interest is paid on a legacy. But interest is paid on a legacy after the expiration of one year from the decease of the testator, as an incident of the legacy, not for wrongful detention of money due. *Kent* v. *Dunham,* 106 Mass. 586. *Ogden* v. *Pattee,* 149 Mass. 82. *Welch* v. *Adams,* 152 Mass. 74. In this case the sums to be paid to the defendants were not sums paid as legacies but were sums paid as part of the residue; there can be no interest in a part of a residue on the expiration of one year, and interest can be recovered in the case at bar only on the ground that the money was wrongfully detained by the executor, and is to be paid by him out of his own property. In this case the money was not wrongfully detained. When the time for distribution of the residue of this estate arrived, these defendants did not demand payment of the sums due to them; their contention at that time was that they were interested proportionately with the plaintiff in one half of the residue, and they entered into a contest with the executor as to what the amount of one half of the residue was. That contest was ended on July 18, and on that day what was due to the defendants was paid or transferred to them.

A decree should be entered declaring that the plaintiff is entitled to the fund in court, and directing the defendant Fitch to transfer to her six shares in the capital stock of the Michigan Central Railroad Company.

*So ordered.*