BANKING HOUSE OF A. CASTETTER V. BERTHA M. DUKES
ET AL.

FILED DECEMBER 16, 1903.    No. 13,197.

1. Judgment: PRESUMPTIONS: COLLATERAL ATTACK. All presumptions are in favor of the regularity of the proceedings of courts of record, when collaterally assailed, and even though the jurisdiction of the court was irregularly or erroneously exercised, the judgment will be final as between the parties and their privies.

2. ———: JURISDICTION: RECORD. Where the steps by which a court of general jurisdiction is supposed to have acquired jurisdiction are all shown by the record, and it appears from an examination of the face of the record, without recourse to extraneous matter, that the court acted without jurisdiction, then the judgment is a mere nullity and may be attacked collaterally.

ERROR to the district court for Washington county: GEORGE A. DAY, JUDGE. *Reversed.*

*Albert W. Jefferis* and *Frank S. Howell,* for plaintiff in error.

*Lysle I. Abbott, contra.*

LETTON, C.

This action was brought by Bertha M. Dukes, formerly Bertha M. Stewart, against the defendants Stockton and Cook and the Banking House of A. Castetter, to recover rents for the undivided one-half of lots 1 and 2, in block 46, in the town of Blair. She states the lots were at one

time the property of her former husband, Edgar A. Stewart, and were decreed to her as alimony in an action for divorce brought by her in said court against him. The defendants Stockton and Cook answered, admitting their liability to pay rent for the premises and their readiness to pay the same, but allege there are diverse claimants for the same, and asking the court to adjudge to whom the rent belongs. The Banking House of A. Castetter answered, setting up title in Edgar A. Stewart, and an assignment of the rent to it by him, and further asserting that the decree in which the property is sought to be set apart to plaintiff as alimony was rendered without jurisdiction and is void, and by cross-petition asks judgment for the rent against Stockton and Cook. The court found for the plaintiff and against defendants Stockton and Cooke, and dismissed the answer and cross-petition of the bank.

The decision of the case rests upon the question, whether or not the district court for Washington county had jurisdiction in a certain action for divorce to render a decree setting over in fee to the plaintiff therein certain real estate as alimony. The petition in the divorce case contained the following allegations relating to the real estate of the defendant and no others:

"Plaintiff further alleges that the defendant is seized in fee simple of lot 17, in block 57, in the city of Blair, Nebraska, on which is situated a dwelling, and other buildings, in which this plaintiff now resides, and has for many years resided, with the defendant, and it is their homestead, and has been such homestead for years, under the laws of the state of Nebraska. The defendant is also seized in fee simple of the undivided one half (½) of lots 1 and 2, in block 46, in the city of Blair aforesaid, and also owns ten acres well improved adjoining the city of Blair. And plaintiff further alleges that the defendant is heavily in debt, as affiant has been informed and believes to the full value of said property other than the homestead upon which plaintiff resides."

Personal service was made upon the defendant, and default was made by him. The prayer and the decree, so far as concerned the real estate, were as follows:

"And the court further finds that at the time of the commencement of this action the defendant was seized in fee simple of lot 17, in block 57, in the city of Blair, Nebraska, and also the undivided one-half of lots 1 and 2, in block 46, including the buildings thereon and their appurtenances, also the east ½ of the west ½ of the southwest ¼ of the northwest ¼ of section 13, township 18 north of range 11 east, in Washington county, Nebraska. And the court further finds that the plaintiff now resides upon lot 17, in block 57, aforesaid, and that the same is her homestead. And the court further finds that the defendant is not a suitable person to have the care, custody and education of their said daughter and that the plaintiff is in all respects suitable and competent to have such care, nurture, education and custody of such minor child. It is therefore considered, adjudged and decreed by the court that the bonds of matrimony heretofore existing between plaintiff and defendant be wholly canceled, annulled and set at naught and the plaintiff be and she is hereby divorced from the defendant, that the plaintiff have the care, custody and education of their minor child, to wit, Bessie Stewart, that all the property mentioned in this decree be decreed to this plaintiff for the support and maintenance of plaintiff and her said child, and that a copy of this decree may be spread upon the records of Washington county, Nebraska, and the same when so spread shall operate as a conveyance of all of said property from the defendant to the plaintiff, and that all personal property now in the possession of the plaintiff, such as household furniture and all other articles, be decreed to plaintiff."

Mrs. Stewart afterwards married one Dukes. The controversy in this case is over the right to collect the rents of the undivided one-half of lots 1 and 2; this, of course, depending upon the question as to whether or not the title

of Edgar A. Stewart was devested by the decree in the divorce proceeding and passed thereby to Bertha M. Stewart, now Dukes.

This is a collateral attack upon the judgment of a court of general jurisdiction. The rule is elementary that all presumptions ·are in favor of the regularity of the proceedings of courts of record, when collaterally assailed, and, even though the jurisdiction of the court was irregularly or erroneously exercised, the judgment will be final as between the parties and their privies. *Hilton v. Bachman,* 24 Neb. 490; *Chase v. Miles,* 43 Neb. 686; *Stenberg v. State,* 48 Neb. 299, 316. Unless the district court for Washington county was absolutely without jurisdiction to set the property, the title to which is in controversy, over to Mrs. Stewart, as alimony, the decree must stand as final and Mrs. Stewart, now Dukes, be entitled to recover the rent of the same from the defendants Stockton and Cook.

To what extent may the jurisdiction of a court of general jurisdiction be inquired into collaterally? We think that the true rule is laid down by a majority of the cases and adopted and approved by this court, namely, that, where the steps by which the court is supposed to have acquired jurisdiction *are all shown by the record,* and it appears from an examination of *the face of the ~record,* without recourse to extraneous matter, that the court acted without jurisdiction, then the judgment is a mere nullity and may be attacked collaterally. Black, Judgments, sec. 218; *Chicago, B. & Q. R. Co. v. Hitchcock County,* 60 Neb. 722; *Fogg v. Ellis,* 61 Neb. 829. The record must recite all the jurisdictional facts for, if silent, jurisdiction is presumed, and the facts recited must be insufficient to confer jurisdiction. In this case, as shown by the face of the record, the court acquired jurisdiction of the defendant by personal service of process and the subject matter of divorce and alimony was within its jurisdiction.

It has often been somewhat loosely stated that, if a

court had jurisdiction of the person and of the subject matter, its judgments were not subject·to collateral attack. While in a general sense this is true, there is a qualifying principle that is often overlooked, which is, that the court must also have jurisdiction of the particular question which it assumes to decide. Mr. Black states the rule as follows:

"In order to the validity of a judgment, the court must have jurisdiction of the persons, of the subject matter, and of the particular question which it assumes to decide. * * * It can not adjudicate upon a subject which does not fall within its province as defined or limited by law. Neither can it go beyond the issues and pass upon a matter which the parties neither submitted nor intended to submit for its determination." 1 Black, Judgments (2d ed.), sec. 215.

It is quite difficult to reconcile the cases bearing upon this subject. Some courts give a liberal construction to the rule and others are strict constructionists, and it is not seldom that the decisions of the same court are not reconcilable in principle with each other. But in this state the question seems to be foreclosed. In *State v. Haverly*, 62 Neb. 767, Judge Holcomb says (p. 781):

"It is fundamental that a judgment or final order made in the trial of a case must be founded upon and within the issues as made by the pleadings."

Says Sullivan, J., in *State v. Dickinson*, 59 Neb. 753:

"It is a rule everywhere recognized by courts administering our system of jurisprudence that the relief awarded by a court must respond to the issues—must be within the case made by the pleadings"; citing *Kitchen Bros. Hotel Co. v. Hammond*, 30 Neb. 618; *Whitney v. Levon*, 34 Neb. 443; *Lincoln Nat. Bank v. Virgin*, 36 Neb. 735; *Rockford Watch Co. v. Manifold*, 36 Neb. 801; *Ross v. Sumner*, 57 Neb. 588. See also *Alter v. State*, 62 Neb. 239. Also in *Lincoln Nat. Bank v. Virgin*, 36 Neb. 735, the court by Post, J., say:

"This case rests upon an entirely different principle

from those cases in which the court had acquired jurisdiction over the subject of the judgment or decree. In such cases the determination of the court, however erroneous, can be called in question only by direct proceedings. We are aware that Mr. Freeman in his work on Judgments, section 135a, expresses a preference for the view that a judgment is erroneous merely, and not necessarily void, although not responsive to any issue of law or fact. We are, however, unable to perceive wherein a judgment entered by a court confessedly outside of the issues submitted for its determination can be said to rest upon any other or different principle than one in which the subject matter is entirely foreign to the jurisdiction conferred upon it." Citing *Spoors v. Coen,* 44 Ohio St. 497; *Sheldon's Lessee v. Newton,* 3 Ohio St. 494; *Strobe v. Downer,* 13 Wis. 11; *Straight v. Harris,* 14 Wis. 553; *Lewis v. Smith,* 9 N. Y. 502; *Williamson v. Probasco,* 8 N. J. Eq. 571; *Steele v. Palmer,* 41 Miss. 88; *Armstrong v. Barton,* 42 Miss. 506; 1 Black, Judgments (4th ed.), 183, 184; *Ex parte Lange,* 18 Wall. (U. S.) 163; *Seamster v. Blackstock,* 83 Va. 232; *Anthony v. Kasey,* 83 Va. 338; *Munday v. Vail,* 34 N. J. Law, 418.

The reasoning applies with greater force where, as in this case, the defendant makes default. The general rule is that a default is an admission of such facts only as are properly alleged in the petition or complaint. 1 Herman, Estoppel, sec. 52; *Russell v. Shurtleff,* 28 Colo. 414, 65 Pac. 27.

We conclude, therefore, that if an examination of the entire record in the divorce case shows that the attempted conveyance of the lots in question to the plaintiff therein as alimony was in excess of the jurisdiction of the district court, the decree so far is void and may be attacked collaterally.

The petition, so far as it relates to real estate, alleges that the defendant is the owner of lot 17, in block 57, in the city of Blair, that it is the family homestead. That the defendant also owned an undivided one-half of lots 1 and

2, in block 46, of the city of Blair, and also ten acres of land adjoining that city. The prayer, so far as relates to the title to real estate is "That the defendant may be enjoined from in any way or manner interfering with the possession of said homestead by the plaintiff * * * and that, upon the final hearing, she may be decreed and given, as permanent alimony, the articles of household furniture and other effects in said dwelling and also the house and lot above referred to, being lot 17, in block 57, aforesaid, free and clear of any debt owing by the said defendant." The finding and decree, so far as they relate to real estate, were as follows:

"And the court further finds that at the time of the commencement of this action the defendant was seized in fee simple of lot 17, in block 57, in the city of Blair, Nebraska, and also the undivided one-half of lots 1 and 2, in block 46, including the buildings thereon and their appurtenances, also the east ½ of the west ½ of the southwest ¼ of the northwest ¼ of section 13, township 18 north of range 11 east, in Washington county, Nebraska. And the court further finds that the plaintiff now resides upon lot 17, in block 57, aforesaid, and that the same is her homestead. * * * It is therefore considered, adjudged and decreed by the court * * * that all of the property mentioned in this decree be decreed to this plaintiff for the support and maintenance of plaintiff and her said child, and that a copy of this decree may be spread upon the records of Washington county, Nebraska, and the same when so spread shall operate as a conveyance of all of said property from the defendant to the plaintiff."

It will be seen that neither in the allegations of the petition nor in the prayer is there any lien, title or interest in the undivided one-half of lots 1 and 2, in block 46, claimed by the plaintiff. She asks specifically to have the homestead set apart to her, but seeks no action affecting the title to the other real estate except so far as a judgment for temporary alimony might affect it. She alleges the defendant is heavily in debt to the full value of "said

property other than the homestead," and she does not pray for any permanent alimony whatever. The petition does not seek to set the powers of the court in action in any respect as to any property but the homestead. Upon an inspection of the allegations of the petition, the defendant would see that the only property, the title to which was called in question, was the homestead, and would further see that no judgment for permanent alimony was prayed for.

Under this state of facts, can it be said that the court ever acquired jurisdiction to take from him the title and ownership of his property not sought to be affected by the pleadings? He has never had his day in court with reference thereto. He apparently was willing to let his wife obtain a divorce, the custody of the child and the title to the homestead and household property, but he was not advised of any intention on her part to interfere with his other property. Without placing any weight upon the fact that in divorce proceedings in this state a court has no power to set aside specific property as alimony unless, perhaps, by consent of the parties (*Segear v. Segear,* 23 Neb. 306; *Nygren v. Nygren,* 42 Neb. 408; *Leeder v. State,* 55 Neb. 133), it seems to us that the court clearly exceeded its jurisdiction in so far as it attempted to deal with the real estate in controversy. That, while it had jurisdiction of the person and the subject matter, it lacked "jurisdiction of the particular matter that it sought to decide," and that the general prayer for relief could not aid it in extending its action beyond the field covered by the allegations of the petition and the specific portions of the prayer.

To hold otherwise would be to allow a court, upon a default, to enter judgments or decrees vitally affecting the property rights of individuals without their knowledge or consent, and thus deprive them of their property without "due process of law."

We are of the opinion that, in so far as the decree in the divorce case purported to set over and convey to the plaintiff Bertha M. Stewart the title to the undivided one-

half of lots 1 and 2, in block 46, including the buildings thereon and their appurtenances, in the city of Blair, it is absolutely void, and that it in no wise affected the title thereto. This being the case, the plaintiff Bertha M. Dukes had no title to the property and no right to recover the rents. No question is made in this case as to the action of the court in decreeing the homestead to the plaintiff, and no opinion is expressed as to this.

We recommend that the judgment of the district court be reversed.

DUFFIE and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is

REVERSED.