IN RE ESTATE OF SUSAN F. KIERSTEAD.
METHODIST EPISCOPAL CHURCH OF TILDEN ET AL., APPEL-
LANTS, V. LEO P. PASEWALK, EXECUTOR, ET AL., APPELLEES.

FILED MARCH 29, 1935. No. 29141.

*Deutsch & Young,* for appellants.

*M. S. McDuffee, Hoagland, Carr & Hoagland, George M. Spurlock* and *C. W. De Lamatre, contra.*

Heard before GOSS, C. J., GOOD, EBERLY, DAY, PAINE and CARTER, JJ., and THOMSEN, District Judge.

THOMSEN, District Judge.

A will contest requiring about eight weeks' trial time, in which two juries disagreed, resulted in a compromise between contestants (relatives of deceased) and represented legatees (charitable organizations and old friends of testatrix). Under the terms of the compromise contract, contestants were given about half the estate's value; certain legatees entitled to specific bequests, some large, abated the same or were classed under the residuary clause of the will; all bequests were greatly reduced; and the will was admitted to probate. Five specific legatees, to whom, under the terms of the contract, about 35 per cent. of the bequests to them was paid, were not represented by counsel in the settlement, made no general appearance in the trials, were not signatory parties to the contract, and, it was agreed, were not parties in the contest except as they might be such by the jurisdictional notice to all persons interested in the estate, the "*in rem*" nature of the proceedings.

The objections to the probate of the will were filed in the county court, but the contest was reserved for the district court, to which, after admission of the will in the county court, contestants had appealed. The district court entered a judgment on the compromise by agreement of the contracting parties, ordered payment in district court of amount due contestants, and remanded the cause to the county court for disposition in accordance with such contract. The executor acted on the directions so received, and it was thereafter, August 12, 1930, that the five before mentioned specific legatees were paid their respective reduced amounts. These five thereafter demanded of the executor payment of the remaining total of each of their specific bequests, and being granted an order by the county court to require payment of such by the executor, the latter appealed to the district court

where the order of the county court was set aside, the district court holding the agreed settlement and judgment entered thereon to have been a bar to any further claim. To set aside the judgment of the district court, four of these specific legatees, John R. Saxton, Methodist Episcopal Church of Tilden, Nebraska, Lillie Pryce and Guy E. Kierstead have appealed to this court. Other questions in this estate, but not here involved, have been presented heretofore in this court. See *In re Estate of Kierstead,* 121 Neb. 423, and 122 Neb. 694. The questions, material to a decision, raised by this appeal are hereinafter stated.

First: Are these petitioners bound by the judgment entered on the contract between the litigating parties in the will contest? The defendants contend that the general notice and the *in rem* nature of the proceeding made petitioners parties bound by any judgment the court would enter. However, the cause being an appealed inquiry into the validity of the will, the court's sole function was to determine that inquiry; the district court's jurisdiction in the first instance extended only to such determination. All persons interested were bound only by a judgment entered within such jurisdictional limitations. The reduction by the court of the amounts due petitioners under the will affected, beyond the permitted limited inquiry, their personal rights to the same extent as if a judgment for the abated amounts had been rendered against them. It seems elementary that such personal rights cannot be invaded by a proceeding *in rem.*

The general principle is well settled that "jurisdiction of the property does not draw after it jurisdiction of the person, and although there has been a seizure of the *res* the court does not acquire jurisdiction of the parties *in personam.*" 15 R. C. L. 642, sec. 85.

The principle is illustrated in the case of *Fitch v. Huntington,* 125 Wis. 204, a suit in the nature of an action to quiet title against a mortgage in which the trial court found and adjudged that the mortgage and

note secured thereby had been satisfied, and discharged the mortgage of record. In a subsequent suit on the note defendant contended that the note was discharged and all personal liability terminated in the former case, although there had been constructive service only and no personal service on the defendant in such action. The court, however, held that the trial court in the first case had jurisdiction to discharge the mortgage of record, but that the court had no jurisdiction to adjudicate the defendant's personal rights and that the judgment was not effectual to bar a personal recovery on the note. To the same effect see *Combs v. Combs,* 249 Ky. 155, in which it is said, quoting 2 Black, Judgments, sec. 792, an analysis taken from a Vermont case, *Woodruff v. Taylor,* 20 Vt. 65: "A judgment *in rem* is founded on a proceeding instituted, not against the person, as such, but against or upon the thing or subject-matter itself, whose state, or condition, is to be determined. It is a proceeding to determine the state, or condition, of the thing itself; and the judgment is a solemn declaration upon the status of the thing, and it *ipso facto* renders it what it declares it to be."

In the *Combs* case is stated the general rule taken from 1 R. C. L. 328, sec. 13, and 15 R. C. L. 848, sec. 322, that proceedings to enforce personal rights and obligations as between individuals are *in personam;* and personal judgments adjusting the rights and obligations between the affected parties cannot be rendered without personal service on or entry of appearance by defendant.

It is this distinction in actions *in rem* and *in personam* which marks the right to declare a *status* or enforce personal rights, or, as here, the right to determine the amount which a legatee shall receive.

As pointed out by Mr. Justice Holmes in *Becher v. Contoure Laboratories,* 279 U. S. 388: "A judgment *in rem* binds all the world, but the facts on which it necessarily proceeds are not established against all the world." Similarly the principle is stated in a Missouri case:

"The statement that judgments *in rem* are binding on the whole world is true only in a restricted sense. The judgment establishing the status of a person or thing or the title to property is conclusive on every one; but not so of the related findings of fact, no matter how necessary to the result. * * * The effect on the *res* cannot be disputed, but to extend the finality of the judgment to its inducing conclusions of fact, when the same facts are later at issue in a collateral action not affecting the *res,* would be to make the judgment *in rem* operate *in personam." State v. Fidelity & Deposit Co.,* 317 Mo. 1078.

"That the proceeding was *in rem,* and that all the world were parties thereto, may be conceded. It will also be conceded that, ordinarily, a judgment *in rem,* rendered by a court of competent jurisdiction, is binding on all persons, and is not open to collateral attack. But it does not necessarily follow that the whole world are bound by every matter litigated and judicially determined in the proceeding of which such judgment is the product. The principal relief sought in a proceeding *in rem* is usually an adjudication upon the status of some person or thing, and the judgment, *ipso facto,* renders the status of such person or thing what it declares it to be. *Woodruff v. Taylor,* 20 Vt. 65. From the very nature and purpose of such judgment, it is essential that it be conclusive and binding on all persons. But in addition to the principal relief sought in a proceeding *in rem,* in which, in a general way, all persons may be said to be interested, there is also commonly involved some personal right pertaining to some particular person or class, which may become the subject of litigation and adjudication in such proceedings between the parties claiming such right, and to which all other parties to the proceeding may be wholly indifferent. While it is essential to the repose and tranquillity of society that a judgment *in rem,* so far as it goes to the principal relief sought in the proceeding and concerns the rights which each

person shares in common with every other person, should be binding on all persons, it would be unreasonable and oppressive to hold that all are bound by the litigation and determination of collateral questions, arising between parties litigating their personal rights in the same proceeding. If such were the law, no man could safely stand aloof while such proceedings are in progress, however indifferent as to the ultimate result, because he could never know to what extent his rights, wholly disconnected from the main purpose of such proceedings, might be affected by the issues framed between other parties therein for the determination of questions concerning only themselves. Such a rule would lead to infinite complications." *Sorensen v. Sorensen,* 68 Neb. 483, 494.

Here the *res* is the will. The known, permitted and expected inquiry by the court in such proceeding *in rem* is the status of the will. To that extent "all persons interested" would be bound. How much each legatee should receive was not within the "expected" inquiry the court was permitted to conduct and thus not within the issues upon which one not appearing would be bound. The court might and would look with favor on disposition by the parties of all questions relating to the estate, and a disposition by contract at variance with the will, to which all interested were parties, would not require the aid of the court if the rights of creditors were not involved. The parties could lawfully bind themselves, under the conditions, to any disposition to which they might agree. Ann. 81 A. L. R. 1187; Ann. 6 A. L. R. 555. Thus the validity of the disposition does not depend upon any action of the court. Necessarily it must follow that what the court might do, if acting on the contract, would depend upon the validity of the latter, and if the contract were invalid in that respect the court's judgment must fail. 34 C. J. 130. It is elementary that one is not bound by a contract he does not sign or authorize. Here the petitioners did not sign or authorize the contract of settlement, and cannot be bound by it, and in so far as

the judgment is based upon the contract the petitioners are not bound by the judgment. We are aware of no authority in the county court or in the district court on appeal, and counsel has cited none, to enable either court to compel a legatee to accept less than the will provides. Seeking, then, for lawful authority to determine the binding effect of the judgment on these petitioners, we are compelled to revert to the court's jurisdiction, the limited inquiry which the court could make, and since the reduction of petitioners' bequests did not fall within a determination of the validity of the will, the foundation of all authority to bind these petitioners fails.

That the question is now raised collaterally constitutes a bar, defendants contend, to petitioners' present action. In *Banking House of A. Castetter v. Dukes,* 70 Neb. 648, it is said: "It has often been somewhat loosely stated that, if a court had jurisdiction of the person and of the subject-matter, its judgments were not subject to collateral attack. While in a general sense this is true, there is a qualifiying principle that is often overlooked, which is, that the court must also have jurisdiction of the particular question which it assumes to decide." And further in the syllabus to that case it is stated that, if it appears from the face of the record "that the court acted without jurisdiction, then the judgment is a mere nullity and may be attacked collaterally." In *Dryden v. Parrotte,* 61 Neb. 339, it is said: "A judicial order or judgment cannot be attacked in a collateral proceeding unless affected by some jurisdictional infirmity." Here the action being one *in rem,* the jurisdiction of the court, as we have shown, extended merely to an inquiry as to the status of the will. The court had no jurisdiction of the particular question which it assumed to decide; and the reduction of petitioners' bequests being in the nature of a personal judgment, the act was beyond the court's power in that character of proceeding. The "jurisdictional infirmity" being apparent, the question is properly raised collaterally. As said in the syllabus to *Gar-*

*rett v. State,* 118 Neb. 373: "A decree of court which is void for want of jurisdiction may be attacked in any proceeding in which any person seeks to assert a right under it. It may be attacked whenever it is sought to be enforced or in any suit in which its validity is drawn in question."

Defendants rely upon the presumption of jurisdiction through the recitals in the court's judgment, and assert that sufficient of the files upon which the district court acted are not in the record; that therefore this court is unable to say fully upon what the district court based its judgment, and thus that the presumption of regularity must apply. However, the recitals show who was present and these petitioners were not listed. A stipulation made by the parties furnishes all missing facts. Furthermore, petitioners offered to produce facts from court records, but defendants objected to the offers on the ground that the facts were all sufficiently admitted by the stipulation, and the trial court sustained the objection on that ground. The defendants cannot now be heard to say that such facts are not sufficiently shown.

Admission of the will to probate by consent of the interested parties, except these petitioners, was solely conditional, the condition being the agreed and different distribution of the estate. The court's judgment is founded on the agreement. Thus arise the interesting questions: Is one, not a party, bound by the condition? or to such is the will freed from conditions and wholly admitted to probate? If the former, must these petitioners pursue the contest for the general admission of the will in order to establish the whole amount of the bequests to them? The questions are now, however, purely academic. All the contestants were parties to the agreement; no one remains to offer resistance to the will's general admission. So the practical effect is a general admission of the will to probate and a substituted division of the property by the agreeing parties.

We have searched eagerly, but in vain, for evidence to

warrant the application of the principle of equitable estoppel. The latter is based fundamentally upon a canon of accurate reasoning that inconsistent facts cannot exist at the same time. Because the ordinary human consciously or unconsciously relies upon this truth and acts upon it, a rule has arisen that one who by speech or action or failure to speak or act, when reasonably he should do so, has led another to his detriment reasonably to believe that a fact is true, the former is not ordinarily thereafter permitted to assert the contrary then to have been true.

(A) After the will contest was settled, inheritance tax was assessed against the various legatees. The ruling of the county court that the assessment of tax should be made on a basis of the bequests in the will was appealed to the district court. The latter reversed the county court, thus requiring assessment on a basis of the amounts named in the settlement contract, and this latter ruling was later sustained in the supreme court. *In re Estate of Kierstead,* 122 Neb. 694. Defendants seek to draw the inference of petitioners' accord with and approval of the settlement contract by this incidental litigation, a ratification of the contract, and such activity now a bar to a different claim. However, the record does not show any appeal or participation by these petitioners in such suit, although made parties in such appeal. The record affirmatively shows the appeal to have been taken by some of these defendants. Furthermore, evidence is lacking of any reliance by defendants on such claimed fact or change of position by them.

(B) Neither do we find evidence to supply an estoppel in the delay by petitioners in asking for payment of the deferred amounts. The record shows that the partial payments were made to petitioners August 12, 1930, and that application for payment of the remainder of the bequests was made to the court about six months after the executor would normally be required to pay, or about eighteen months after his appointment, but no evidence is offered to show that defendants were detrimentally affected by such delay.

(C) Acceptance by petitioners of the decreased amounts is not shown to have been done with knowledge by petitioners of the facts upon which such payments rested; nor does the evidence show such payments to have been tendered as in full settlement.

In no one of the foregoing instances does the record show that defendants or any of them, relying upon any such, acted or failed to act, or were in any way affected. Though the settlement of the contests was wise and fair, and petitioners ought morally to be bound, yet we cannot supply evidence on which the record is silent in order to hold petitioners legally.

Defendants use a subtle and appealing form of persuasion to convince us that through the following facts all the petitioners are barred from recovery, particularly petitioner Saxton. Petitioner Saxton arranged with contestants that, in the event the will were denied probate, all the petitioners should receive the same amount as the will gave them; and then three of them became witnesses on behalf of contestants, petitioner Saxton being designated as the "star" witness. It would seem that such contriving for advantage should be rewarded by no security greater than a wager, but a logical analysis of the facts compels us to reach a different conclusion. Here justice is interested only in truth; and if the ultimate effect of an arrangement of that character is merely to relieve the natural mental reserve and permit the witness freely to tell what he knows about the facts, we find no moral hazard in the arrangement. Furthermore, it has heretofore been held that a contestant is not barred from recovery under the will by his act of contesting. *State v. Adams,* 71 Mo. 620. A different situation might arise, and incidentally a different conclusion might be reached, if proof showed that the consideration for the promise were testimony favorable only to contestants.

Ordinarily interest is to be allowed on a specific legacy after one year from the appointment of the executor. *Smullin v. Wharton,* 83 Neb. 328; *In re Estate of Bullion,* 87 Neb. 700; *Lewis v. Barkley,* 91 Neb. 127.

When, however, to charge the executor with interest would be inequitable, as when delay in payment has been caused by a will contest or through litigation which prevented speedy administration of the estate, the executor is not ordinarily chargeable with interest, at least until a reasonable time has elapsed after his difficulty has ceased. *Goodman v. Palmer,* 137 Tenn. 556; *In re Doty's Estate,* 231 Mich. 115; *Phelps v. Fitch,* 178 Mass. 442.

Allowance of interest which has been applied to estates is controlled by sections 45-101 to 45-104, Comp. St. 1929, and those portions of the statutes controlling the payment of claims in decedents' estates, sections 30-610 *et seq.,* Comp. St. 1929, as amended. See *Bell v. Arndt,* 24 Neb. 261; *Smullin v. Wharton,* 83 Neb. 328, 346. Section 45-104, Comp. St. Supp. 1933, as here applicable, provides for statutory interest "on money * * * due, and withheld by unreasonable delay of payment." What constitutes unreasonable delay is a question of fact. In this case the executor was unable to proceed with the administration of the estate pending litigation. Subsequently funds were impounded through insolvency proceedings of a Norfolk bank. Under these and all the conditions, we think it fair that the executor be charged with interest on the specific legacies allowed in this opinion only from the 14th day of December, 1931, at 7 per cent.

We believe we have covered all propositions raised by petitioners, and in view of the foregoing conclusions, the judgment of the district court is reversed and the cause is remanded, with directions to enter judgment in favor of petitioners, Methodist Episcopal Church of Tilden, Nebraska, for $650, John R. Saxton, $325, Lillie Pryce, $975, and Guy E. Kierstead, $650, with interest on each amount from December 14, 1931, at 7 per cent.

REVERSED.