Moyer vs. Koontz and others.

Moyer, Guardian, Appellant, vs. Koontz and others, imp., Respondents.

*April 6 — April 25, 1899.*

*Annulling divorce after death of party obtaining it: Status of a party: Nonresidents: Substituted service.*

1. Where a divorced wife, after the death of her former husband, seeks to annul the divorce on the ground that it was obtained by fraud, the action is not one affecting the status of the wife.
2. In order to confer jurisdiction by substituted service upon nonresidents under the statutes of this state, the cause of action therein required to exist must be one which affects property within the state or the status of a resident thereof.

Appeal from an order of the circuit court for Outagamie county: John Goodland, Circuit Judge. *Affirmed.*

The complaint alleges that the plaintiff's ward, Fannie Kuntz, prior to 1864, was the wife of Cornelius Kuntz, resident in the town of Dale, Outagamie county; that ever since 1860 she has been wholly insane, and prior to 1864 had been sent to the Mendota Insane Asylum, but had returned to the home of her father, where she was being cared for; that in 1864 her husband obtained a decree of divorce on allegations of adultery, by fraud in actively concealing from the court the fact of her insanity, and so distorting evidence as to defraud the court; that afterwards, in August, 1865, he married the defendant *Lurilla* (then Hall), and lived with her until 1878 in Waupaca county, when they moved to the state of Colorado, where he died November 16, 1896, leaving two children by *Lurilla*, the defendants *Nellie* and *Minnie*, and leaving real and personal property in Colorado, and also in Nebraska, and that the defendant *Minnie Koontz* has been duly appointed administratrix in Colorado, and defendant *E. H. Strayor* administrator in Nebraska; that the other defendants are the children of the first marriage; that the plaintiff's ward has been hopelessly and wholly insane, so as to

have no knowledge of any transactions, continuously ever since about 1860; that *Moyer* is her general guardian, appointed in January, 1884, and that said guardian, and all the relatives and friends of Fannie Kuntz, were ignorant of the grounds on which the divorce had been obtained, and of the fraud practiced therein, until within a few months of the commencement of this suit. The prayer is that the decree of divorce of June 22, 1864, be declared void and of no effect.

Upon the complaint, and an affidavit of the guardian setting forth most of the above-stated facts, the nonresidence of the respondent defendants, and that a cause of action exists against them which arose in this state, the plaintiff applied for and obtained an order of publication, in pursuance of which the summons and complaint were served by delivering the same personally as to the respondents outside the state. *Lurilla* and *Nellie Koontz, Minnie Koontz,* as administratrix, and *E. H. Strayor,* as administrator, appeared specially, and moved that the order of publication be vacated and set aside, and that the service of the summons on *Minnie Koontz,* as administratrix, on *E. H. Strayor,* as administrator, and on *Lurilla* and *Nellie Koontz,* be set aside, and the said summons, as to these defendants, be quashed, and the action as to them dismissed for want of jurisdiction; which motion was granted, and order entered accordingly. The plaintiff appeals therefrom.

For the appellant there was a brief by *Reed & Reed,* and oral argument by *Myron Reed.*

*J. S. Anderson,* for the respondents.

Dodge, J.   The statute of Wisconsin (Stats. 1898, sec. 2639) authorizes service by publication upon a defendant against whom a cause of action appears to exist when the cause of action arose in this state, and the court has jurisdiction of the subject of the action, whether founded on contract or tort.

Moyer vs. Koontz and others.

Clearly, the cause of action arose within this state, and, so far as our statute is concerned, the question of the right to acquire jurisdiction by publication depends on whether a cause of action appears to exist against these defendants.

It was decided by this court in *Johnson v. Coleman,* 23 Wis. 453, that in equity a cause of action exists by a widow to vacate and annul a decree of divorce obtained by fraud, and that such action can be maintained, after the death of the husband, against both his heirs and the administrators of his estate, provided, of course, there be property so that there are pecuniary interests to be affected; and this, too, in an action simply to annul the decree, without being addressed toward any specific property or rights therein. The doctrine of this case has support from many authorities, although it also has much antagonism in others. Assuming its correctness, it would appear that a cause of action does exist in favor of the plaintiff which arose in this state, and if the same survives (a question not discussed, though inferentially assumed, in *Johnson v. Coleman*), then that the children and administrators are the proper parties thereto, so that it exists against them.

Substantially the only difference between *Johnson v. Coleman* and this case is that the respondent defendants are nonresidents of this state. The question is whether this difference constitutes a legal distinction.

While procedure in our courts, inclusive of the method of obtaining jurisdiction by substituted service over those nonresident, is, and properly may be, regulated by our legislature, yet such power is subject to the federal limitation that courts of a state cannot so acquire jurisdiction over nonresidents for mere purposes of personal adjudication against them; indeed, not for any purpose, except to adjudicate either with reference to property within this state or with reference to the status of one of our own citizens. Our statutes on this subject of the acquirement of jurisdiction over

nonresidents must be read in the light of the interstate limitations resting upon us by reason of the frame of government of the nation of which our state is a part. *Pennoyer v. Neff*, 95 U. S. 714, is perhaps the leading case on this subject, and there the rule above stated is announced, and has never since been questioned.

Under the rule in *Johnson v. Coleman* there would seem to be no doubt that a wife might bring suit in our courts to annul a decree of divorce there entered, and confer jurisdiction by substituted service, in accordance with our statutes therefor; but it would be for the reason that the purpose of the suit was to adjudicate and act upon her status in relation to her absent husband, just the same as if she were suing for a divorce. Marital status is well described by Mr. Bishop in §§ 698–702, vol. 1, and § 153, vol. 2, Marriage, Div. & Sep., and *St. Sure v. Lindsfelt*, 82 Wis. 346, and *State v. Duket*, 90 Wis. 272. The question to be decided is simple: Shall this person, citizen of this state, be adjudged to be married or single? The status of marriage is dual. It cannot exist in the case of the one party without existing equally as to the other, and therefore, incidentally, the status of the nonresident party is to be adjudged as well. The object of such a suit as this, when the husband is alive, is to adjudicate that whereas, by the existing fraudulent decree, the plaintiff is made single, she shall, by the demanded judgment, be adjudicated to still be married. It is the converse of the divorce suit, where the relief sought is that, whereas the plaintiff is now married, she may be adjudged to · be single. But, in a case like this, where, by the irrevocable act of death, her status as to her deceased husband has become fixed as that of a celibate, no such question can exist to be acted on. No decree that the courts of Wisconsin can render can change that status. It then becomes a mere adjudication as to a record, for the purpose of satisfying a sentiment or affecting property rights. As is well said in

Moyer vs. Koontz and others.

2 Nelson, Divorce & Sep. § 1054, "The proceeding will be a mere contest for property; for if the decree is vacated the survivor cannot be restored to marital rights [or status]."

It seems clear, therefore, that we have no question of status to act on here, so as to justify or empower our courts to reach their hands beyond the limits of the state, and seek, upon substituted service, to subject nonresidents to a decree, ostensibly to cure a record, the only purpose of which is to affect rights in property without this state. This would be in excess of the rights of the state. It is forbidden by the whole policy of our national government. It infringes that principle of the international law as it existed among the states in 1790, and is still maintained, that the jurisdiction of a state does not extend beyond its boundaries, and, if carried into effect, would violate the fourteenth amendment of the constitution, which prohibits Wisconsin and all other states from enacting any law which shall deprive any person of life, liberty, or property without due process of law.

Our statutes for service upon nonresidents are subject to the limitation that the cause of action therein required to exist must be one which affects property within this state or which affects the status of a resident. Such cause of action is not presented by the complaint in this case, and no jurisdiction to adjudicate thereon can be obtained against the respondents.

*By the Court.*— The order appealed from is affirmed.