FITCH, Appellant, vs. HUNTINGTON, Executor, and others, Respondents.

*March 18—June 23, 1905.*

*Executors and administrators: Estates of decedents: Distribution: Note and mortgage of legatee to testator: Cancellation by foreign judgment based on substituted service: Res adjudicata: Accounting by executor: Specific objections: Hearing on appeal: Burden of proof.*

1. Defendant's testatrix died a resident of Wisconsin, possessed of a note given by plaintiff secured by mortgage on lands located in Iowa owned by plaintiff's husband. Thereafter plaintiff's husband prosecuted an action in an Iowa court and procured an adjudication that the note and mortgage had been discharged because they had been presented as a gift to the plaintiff by the testatrix in her lifetime. In that action the decedent's executor was served by publication and entered no appearance. *Held,* that the Iowa court could not pronounce a judgment affecting personal rights of the executor, or deprive him of a valid con-

tract right against plaintiff which was purely personal in its. nature and not within the jurisdiction of that court.

2. In such case the judgment of the Iowa court was not *res adjudicata.* as to plaintiff's liability on the note, and it was properly charged to her as a payment to apply on her distributive share as legatee.

3. Specific objections to the allowance of items of an executor's final. account having been made as required by County Court Rule XV, on a trial in the circuit court on appeal evidence should be introduced by the executor to show their correctness before they can be properly allowed.

APPEAL from a judgment of the circuit court for Grant county: GEORGE CLEMENTSON, Circuit Judge. *Affirmed in part; reversed in part.*

This is an appeal from the judgment of the circuit court for Grant county affirming the final order of distribution of the county court of said county in the matter of the estate of one Mary Huntington, who died testate prior to April, 1897. It appears that the will of the testatrix was probated December 27, 1897, and letters of administration were granted to *John P. Huntington;* that the estate amounted to from $40,000 to $50,000, and was by the will divided into eight equal parts, one of which parts was given to each of six of the living children of said testatrix (appellant being one of said children), one of said parts to two grandchildren, who were the heirs of a deceased child of the testatrix, and one of said parts to Sarah Sherbon, to hold during her life, and at her death to be divided among the children and grandchildren of the testatrix. It further appears that in March, 1884, the appellant and her husband, H. H. Fitch, both of whom lived in Sac county, Iowa, gave to the deceased a mortgage upon land in Sac county owned by the husband to secure the payment of a note given by the appellant to the deceased, amounting to $1,385.33, with eight per cent. interest; that this note and mortgage came into the hands of the defendant, as executor of the estate, and have ever since remained there; that in July, 1902, Henry H. Fitch brought an action

in the district court of Sac county, Iowa, against the respond-
ent, as executor, the appellant, and all other legatees and dev-
isees under the will in question, praying that the mortgage
be discharged of record because the note and mortgage had
been canceled and receipted in full and presented as a gift
by the testatrix, in her lifetime, to the appellant; that the
original notice in this action (equivalent to a summons under
our practice) was personally served on the appellant and by
publication upon all the other defendants; that no appear-
ance was entered in said action by any of the defendants;
and that the court finally adjudged that the note and mort-
gage had been discharged and satisfied, and that the mortgage
should be, and was, discharged of record. It further ap-
peared that, when the respondent executor filed his final ac-
count of his trust, he charged the amount of this note and
mortgage against the appellant as a payment upon her dis-
tributive share, whereupon the appellant filed her petition
asking that the said note and mortgage be stricken from the
inventory of the estate, and that it be adjudged to have been
paid, canceled, and discharged. Issue was taken upon this
petition, and the matter was heard as a part of the hearing
upon the executor's final account in the county court, which
court rendered judgment restating executor's account, and
holding that the said note and mortgage was a valid obliga-
tion on her part and was a part of the estate, and that the
same should be charged to the appellant. The judgment also
assigned one eighth of the estate absolutely to Sarah Sherbon,
with no provision protecting the rights of the remaindermen.
From this judgment, appeal was taken to the circuit court.
On the trial of this appeal the appellant admitted that the
account of the executor was correct except as to three items,
to wit, an item of $100 paid to Miss Sherbon for her expenses
in attending as a witness from California in the matter of the
controversy raised by the petition of Elizabeth Fitch; also
an item of $321.25 paid to Burns & Ellis for attorney's serv-

ices and expenses in settling the estate; also an item of $3,336.48 charged by the executor against the appellant, being the amount due upon said note and mortgage. Upon the trial substantially the only evidence offered on either side was the record of the action brought in the district court of Sac county, Iowa, together with certain extracts from the statutes and certain decisions of the supreme court of the state of Iowa. The judgment of the county court was affirmed by the circuit court, and the plaintiff appeals.

*P. A. Orton,* for the appellant.

For the respondents there was a brief by *Burns & Ellis* and *A. W. Kopp,* and oral argument by *Mr. E. E. Burns* and *Mr. Kopp.*

The following opinion was filed April 5, 1905:

WINSLOW, J. The most important question in this case is as to the effect of the Iowa judgment. The appellant's claim is that this judgment is *res judicata* between all the parties to this action, and forever determines not only the fact that the mortgage is not a lien upon the Iowa land, but that the note has been discharged and all personal liability thereon terminated. It is freely conceded that the effect of the judgment is to relieve the land of the lien. This land was within the jurisdiction of the Iowa court. The action to declare it free from the apparent lien was an action *in rem.* It was apparently conducted as provided by the laws of the state of Iowa. Substituted service as provided by those laws was made upon the respondent. Upon very familiar principles he cannot now question in any court the conclusiveness of that decree so far as the title to that property is concerned. But upon principles equally familiar, that court, upon merely substituted service, could not pronounce a judgment affecting the personal rights of the respondent, or deprive him of valid contract rights against third persons which were purely personal in their nature, and not within the jurisdiction of the

court. It could determine, on substituted service, whether the title to land within its jurisdiction was clouded by a mortgage, but it could not determine that personal liability upon a promissory note held by a person in Wisconsin (neither note nor person being within its jurisdiction) had ceased. There are two distinct things in every note and mortgage: there is the personal obligation created by the note, and there is the lien upon the land created by the mortgage. *Thorp v. Mindeman,* 123 Wis. 149, 101 N. W. 417. The lien may well be said to be in Iowa because the land is in Iowa, and the Iowa court has jurisdiction to deal with the land and the lien thereon and determine the condition of the title thereto; and in so doing it may, if the law so provide, give no further notice to interested parties outside the state than substituted service of process, but it cannot enter a judgment wiping out the purely personal liability upon the note. In other words, and as substantially said in *Moyer v. Koontz,* 103 Wis. 22, 79 N. W. 50, it may adjudicate with reference to property within the state, or with reference to the status of one of its own citizens, but it has no jurisdiction for mere purposes of personal adjudication against a nonresident upon whom substituted service alone was made. This is decisive of this question. The Iowa court held that the note had been discharged, but this holding was only effective so far as it formed a basis for removing the lien. It had no effect upon the personal liability or the note, because the man who held title to that personal liability was not before the court except by substituted service, and his rights to enforce that personal liability could not be affected. The trial court was therefore entirely right upon this question.

As appears by the statement of facts, the appellant, in the circuit court, admitted that the executor's final account was correctly stated except as to three items. One of these items refers to the note and mortgage, and has been considered. The remaining two items are: (1) $100 paid Miss Sherbon

for expenses attending as a witness from California upon the controversy raised by the petition of Elizabeth Fitch; and (2) bill of Burns & Ellis for attorney's services and expenses, $321.25. No testimony of any kind was given with reference to these items upon the trial, but the judgment of the county court allowing the account including these items was affirmed. Specific objections to the allowance of these items had been made in the county court, as required by County Court Rule XV, sec. 4. The trial in circuit court is a trial *de novo,* and not a mere review of errors. Sec. 4034, Stats. 1898. Sec. 6 of the last-mentioned rule provides that even in case of no contest a final account shall not be allowed of course by the county court, but the court shall be satisfied of its correctness before allowing the same. *A fortiori* must this be the case when specific objection is made. There may, perhaps, be items in such an account so entirely within the official knowledge of the county judge, from the records of the estate in his custody, that formal introduction of evidence would be unnecessary in their support; but, as to the two items in question here, we think there can be no doubt that evidence should have been introduced by the executor to show their correctness before they could be properly allowed.

We find it necessary, therefore, to reverse that part of the judgment which affirms the judgment of the county court as to these two items. As there was evidently a misapprehension in the trial court as to where the burden of proof rested on these items, we shall not order the entry of judgment, but allow further proof to be taken. That part of the judgment assigning one eighth of the real estate to Sarah Sherbon absolutely, instead of for life, will also be reversed, and the proper judgment directed preserving the rights of the remaindermen, though this point was not raised in the trial court.

*By the Court.*—So much of the judgment which affirms the allowance of the items of $100 paid to Sarah Sherbon, and

·$321.25 paid to Burns & Ellis, and the assignment of one eighth of the real estate absolutely to Sarah Sherbon, is reversed; the remainder of the judgment is affirmed, and the cause is remanded with directions to take testimony as to the correctness of the said items, and for further proceedings and judgment in accordance with law and this opinion. No costs are to be taxed in favor of either party, except that the fees of the clerk of this court are to be taxed against and paid by the respondent.

A motion for a rehearing was denied June 23, 1905.