## Combs v. Combs et al.

(Decided May 12, 1933.)

156

LEEBERN ALLEN and W. L. KASH for appellant.
T. T. COPE and A. F. BYRD for appellees.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellant, A. T. Combs, who was one of the defendants below, became indebted to the appellees and plaintiffs below, in a considerable sum. A lien to secure it was created on a tract of land in Washington county, Ark. Plaintiffs were and are residents of Kentucky and of other states, and all of them were and are nonresidents of the state of Arkansas. Appellant's brother, who was a joint defendant with him, is a resident of this commonwealth, and this action was filed by plaintiffs in the Breathitt circuit court against appellant and his brother to obtain a personal judgment against them for the amount of the debt. Personal process could not and was not served on appellant for

a considerable time after he was proceeded against and made a defendant in the action. During that time he filed an equity action in the chancery court of Washington county, Ark., in which the land in lien was situated, against the plaintiffs in this action, and proceeded against them exclusively by constructive process in accordance with the prescribed practice of the Arkansas forum. In his petition in that court he set forth the facts creating the indebtedness, as well as the lien on his land to secure it, and stated that he had paid part of the debt, leaving a named sum as the balance due, and that the lien to secure it was a cloud on the title to his land which he desired released, and he asked that court to enter judgment fixing the amount of the balance due by him to plaintiffs in this action (but defendants in that one) and to permit him to pay that amount into that court to be followed by a decree canceling the lien on his land. The Arkansas practice for that kind of procedure was followed, and upon submission, without any of the defendants therein entering their appearance in any manner, that court adjudged that plaintiff therein, appellant herein, was indebted to the defendants in that action (plaintiffs herein) in the sum admitted in his petition, and ordered him to pay it to the master commissioner of that court which he did, and, when done, that the lien on his land should be released. Appellant then procured a copy of that proceeding and filed his answer in this action relying upon the Arkansas judgment in bar of a recovery herein. The court disallowed that defense and rendered judgment against appellant for the amount it found to be due plaintiffs, and to reverse it defendant prosecutes this appeal.

The only argument made, and the only possible one that could be made, against the propriety of the judgment appealed from is that the Arkansas judgment, under the provisions of section 1 of article 4 of the Federal Constitution, is entitled to full faith and credit in this state the same as if it had been rendered by a court of competent jurisdiction in this state, and that, since it is argued that the Arkansas court had jurisdiction to render the judgment relied on as a defense herein, it is binding on plaintiffs, and that they may not impeach it in this collateral attack. In making that argument, counsel assumes the correctness of the crucial point in this case, and we think erroneously so. It is, that the Arkansas court had jurisdiction, upon con-

structive process alone, to finally and conclusively adjudge the amount of plaintiff's debt owed to them by defendant, and then to assume to collect it through its master commissioner, or, more appropriately, to direct plaintiff in the Arkansas judgment to discharge it by paying the amount found to be due to the court's master commissioner, and to thereby completely discharge defendant from all further liabilty to plaintiffs. The error in the assumption of counsel for defendant lies in their failure to appraise and comprehend the nature of the relief granted by the Arkansas judgment and relied on as a defense in this case; confusing it with the power and jurisdiction of that court to deal with and adjudicate concerning the res within its jurisdiction, which in this case was the land in lien for plaintiff's debt.

At the outset it may be seriously questioned whether the Arkansas court had jurisdiction even of the res, the Arkansas land, in this case, as based upon the ground alleged in the Arkansas petition to obtain the relief prayed for. That ground was that the lien on defendant's land in that state created a cloud on his title, and that, since courts of equity are vested with jurisdiction to remove clouds on titles to real estate, the Arkansas court, having jurisdiction of the res, the title to which was so beclouded, was vested with jurisdiction to remove that cloud, and which, no doubt, is the established doctrine in cases where there is an actual and legally recognized cloud upon the title to real estate. But in this case the alleged cloud on defendant's title to his Arkansas land was and is only an incumbrance voluntarily put upon the title by himself to secure an obligation that he agreed to pay plaintiffs, and was not a threatened danger emanating from an outstanding adverse claim or title to his land. The alleged cloud in this case was not only of the nature indicated, but it was an invited one and amicable to defendant's title, and one which he agreed to and could remove, having created it by like voluntary action in creating his debt to plaintiff. A cloud, such as requires the intervention of a court to remove, would seem to be one that the applicant for its removal had neither created nor was he under any personal obligation to discharge or remove; and for which reason, we repeat, that it is even doubtful if the Arkansas court had jurisdiction to relieve the land in that state from the lien

that defendant had put upon it. But, since that question is not presented by this record, we will pursue its discussion no farther, and will devote the remainder of the opinion to a discussion of the in personam portion of the Arkansas judgment which is questioned in this case.

Judgments for certain purposes are divided into three classes, and which are designated as personal judgments, judgments in rem, and judgments quasi in rem. In determining the question involved, it becomes necessary to consider briefly those classifications. The text in 33 C. J. 1063, sec. 19, in defining and differentiating judgments in rem, and personal (in personam) judgments, says: ''A judgment or decree in rem is an adjudication pronounced upon the status of some particular subject matter by a tribunal having competent authority for that purpose. It differs from a judgment or decree in personam in this, that the latter is in form as well as in substance between the parties claiming the right in controversy, and does not directly affect the status of the res, but only through the action of the parties.''

Mr. Black in his work on Judgments, volume II, sec. 792, quotes with approval the definitions and distinctions between those two classes of judgments as given by the Vermont Supreme Court in the case of Woodruff v. Taylor, 20 Vt. 65, to this effect: ''A judgment in rem I understand to be an adjudication, pronounced upon the status of some particular subject matter, by a tribunal having competent authority for that purpose. It differs from a judgment in personam in this, that the latter judgment is, in form as well as substance, between the parties claiming the right; and that it is so inter partes appears by the record itself. It is binding only upon the parties appearing to be such by the record and those claiming by them. A judgment in rem is founded on a proceeding instituted, not against the person, as such, but against or upon the thing or subject matter itself, whose state, or condition, is to be determined. It is a proceeding to determine the state, or condition, of the thing itself; and the judgment is a solemn declaration upon the status of the thing, and it ipso facto renders it what it declares it to be.''

Mr. Freeman in his work on Judgments (5th Ed.) vol. 3, sec. 1517, quotes and adopts the same definition

from the same court, and also from volume II of Phillips' on Evidence defining judgments in rem "to be the judgment of a court of exclusive, or at least peculiar, jurisdiction, declaratory either of the nature and condition of some particular thing," or of the condition and status of some particular person. Other authorities are cited and quoted by each of the eminent authors referred to. The difficulty of accurate definitions and differentiations between them is not lost sight of by Mr. Freeman, since he prefaces his discussion of judgments in rem with this remark: "We now come to the consideration of a class of judgments very well understood, but quite difficult to describe." Such general definitions are of universal recognition and application. Accurately speaking, a proceeding strictly in rem is one against the thing itself with no cognizance taken of its owner or persons having a beneficial interest in it; a prominent illustration of which is maritime proceedings to enforce claims against vessels. The vessel itself is seized, as is the res in all other strictly in rem proceedings, and thereby brought in custodia legis for its title and status to be adjudicated by the court, and which adjudication when acquired by the proper procedure is binding upon the world. The doctrine has been extended to the status, not only of things, but of individuals and their relations to others, a prominent illustration of which is that of divorce. Adjudications in such strictly in rem proceedings do not require personal service of process on interested parties in order to make the judgment harmonize with the "due process clause" of our Federal and State Constitutions (Const. U. S. Amend. 14; Const. Ky. sec. 14). The courts of this country apply such constitutional guaranties to the protection of personal obligations and rights as between individuals wholly divorced from rights issuing from the res, of which only the court has jurisdiction. Proceedings to enforce such personal rights and obligations are what is termed in law "in personam" ones, and in which personal judgments are rendered adjusting the rights and obligations between the affected parties, and which may not be done except upon personal service or entry of appearance by defendant in some of the modes by which that may be done.

Between the extremes of strictly in rem proceedings and those that are strictly in personam is a class designated by courts and law-writers as proceedings

quasi in rem, and which are so characterized because judgments in such actions affect not only the title to the res, but likewise rights in and to it possessed by individuals. Mr. Black in his volume supra, section 793, thus points out the nature and characteristics of such proceedings: "There is, however, a large class of cases which are not strictly actions in rem, but are frequently spoken of as actions quasi in rem, because, though brought against persons, they only seek to subject certain property of those persons to the discharge of the claims asserted. Such are actions in which property of non-residents is attached and held for the discharge of debts due by them to citizens of the state, and actions for the enforcement of mortgages and other liens." That excerpt is taken from the opinion of the Supreme Court of the United States in the case of Freeman v. Alderson, 119 U. S. 187, 7 S. Ct. 165, 30 L. Ed. 372, and is in complete accord with all opinions and texts dealing with the subject. In such cases it is thoroughly settled that the personal rights of the defendant in and to the res within the custody of the court may be dealt with and adjudicated in so far as it adjudicates the status of the particular res, including the title thereto; and such an adjudication, if the defendant were properly proceeded against even by constructive process, would be binding and obligatory on defendant in any court of any state.

Hence, in this case, conceding that there was no doubt of the proper cloud upon defendant's title to his Arkansas land so as to authorize the action in that state to remove it, the judgment rendered by the Arkansas court would be obligatory on plaintiffs herein in so far as it released their lien upon the land in that state. But, when the court undertook to grant additional relief strictly in personam, it transgressed its jurisdiction so as to render such unauthorized additional relief of no force and effect whatever. That relief in this case was the adjudication that defendant herein had paid to plaintiffs herein any part of his debt and thereby discharged a part of his obligation to them, and that the court could and did fix the amount due from him to plaintiffs herein and directed its payment to the commissioner of that court. The rights so attempted to be adjudicated were and are strictly personal. It may be that the Arkansas court was vested with authority to lift the lien from the land involved, and for that pur-

pose to incidentally determine the amount of the lien, and whether or not it had been paid, but the only binding effect of such adjudications would be that of releasing the lien as an incumbrance upon the title to the res. Such adjudications in so far as they affected the personal obligations and rights of the parties were and are not binding upon plaintiffs herein, nor do they operate as a res adjudicata estoppel in any future action.

An illustration is found in the domestic case of Downs v. Downs' Adm'r, 123 Ky. 405, 96 S. W. 536, 537, 29 Ky. Law Rep. 849. In that case a decree of divorce had been obtained in a sister state in which the court granting it had not seized any res, but nevertheless it proceeded to render a personal judgment against defendant, who was a nonresident and not served with personal process, nor entered his appearance, and the alimony judgment was sought to be enforced in this state. In denying that relief, we said: "We have no doubt of the jurisdiction of the Missouri court to decree the divorce of the appellant from her husband. This was a procedure in rem, and of the res undoubtedly the court had jurisdiction; the plaintiff being lawfully domiciled in Missouri. But a judgment for a sum of money by way of alimony is in personam, and in order to acquire jurisdiction for this purpose it was necessary to obtain jurisdiction of the person of the defendant. This, as said before, can only be done in one of two ways: First, by the service of process upon him within the territorial jurisdiction of the court; or, second, by the voluntary entry of his appearance to the action. No state can, by force of its own laws, acquire jurisdiction of the person of an absent defendant." Other domestic cases are cited in that opinion as well as foreign ones, some of which were rendered by the Supreme Court of the United States. Also we therein referred to and quoted from, as supporting the conclusion reached therein, such noted authors as Freeman on Judgments, Cooley on Constitutional Limitations, and Story on Conflict of Laws.

In pointing out the invalidity of personal judgments because of the absence of personal service rendered in in rem proceedings where the court has undoubted jurisdiction of the res, Mr. Freeman in volume I of his work, supra, section 347, says: "It is still possible for the court, even where the parties cannot be brought within its jurisdiction, to obtain power to act

in respect to the res either by its actual seizure under process or, even where no seizure is made, by constructive notice to the owners in accordance with the requirements of the statutes. But notice by publication is restricted in its legal effect and cannot be made available for all purposes. It will enable the court to act in so far as the subject of the proceedings is within the limits and therefore under the control of the state. For all property within a state is subject to the jurisdiction of its courts, and they have the right to adjudicate title thereto, to enforce liens thereupon, and to subject it to the payment of the debt of its owners, whether resident or not.'' The learned author then refers to the difficulty in reconciling the authority to grant even such relief with the general principle that a court has no jurisdiction over persons who are neither citizens; nor residents of the state, and then says: ''This difficulty has been solved by regarding as quasi proceedings in rem all actions or proceedings the direct object of which is to affect the title, or to enforce liens upon property, or to make it contribute to the satisfaction of such judgment as may be recovered. Accordingly, where the court has obtained power to dispose of the res, it may, even as against nonresidents, subject it to judgments in rem or quasi in rem such as those in partition,'' etc. But such incidental in personam relief is granted because the jurisdiction of the court is rested exclusively upon the situs of the res, and is imperatively essential to the fixing of its status and as affecting rights therein.

The exact question we have here was before the Supreme Court of Wisconsin in the case of Fitch v. Huntington, 125 Wis. 204, 102 N. W. 1066, 1067, and in which that court disallowed the defense which was identical in its nature to the one here interposed. In that case an Iowa judgment, releasing a lien upon property in that state, was relied on in a later action brought in the state of Wisconsin as a bar to the debt which the released lien by the Iowa judgment secured. The Wisconsin court rejected the defense, and in so doing said: ''There are two distinct things in every note and mortgage: There is the personal obligation created by the note, and there is the lien upon the land created by the mortgage. Thorp v. Mindeman, 123 Wis. 149, 101 N. W. 417 [68 L. R. A. 146, 107 Am. St. Rep. 1003]. The lien may well be said to be in Iowa, because the land is in Iowa, and the Iowa court has

jurisdiction to deal with the land and the lien thereon, and determine the condition of the title thereto; and, in so doing, it may, if the law so provide, give no further notice to interested parties outside the state than substituted service of process, but it cannot enter a judgment wiping out the purely personal liability upon the note. In other words, and as substantially said in Moyer v. Koontz, 103 Wis. 22, 79 N. W. 50, 74 Am. St. Rep. 837, it may adjudicate with reference to property within the state, or with reference to the status of one of its own citizens, but it has no jurisdiction for mere purposes of personal adjudication against a nonresident upon whom substituted service alone was made. This is decisive of this question. The Iowa court held that the note had been discharged, but this holding was only effective so far as it formed a basis for removing the lien. It had no effect upon the personal liability or the note, because the man who held title to that personal liability was not before the court, except by substituted service, and his rights to enforce that personal liability could not be affected. The trial court was therefore entirely right upon this question.''

That opinion is approved in annotations in 42 A. L. R. on page 478, and there can be no doubt of its soundness. If the position of counsel for defendant in this case should be approved, then the due process clause of the Federal Constitution, and those of the various states, would become a nullity in all cases of debts secured by liens retained upon property having a situs in a different jurisdiction from that of the creditor, since the debtor in such cases could become relieved of, not only the lien upon his property, but also of his personal obligation by a proceeding filed for that purpose in the local court with constructive process only and testifying to the amount of his debt or the amount he had paid thereon, even to its entire extinguishment, to be followed by a judgment in accordance with the character of the testimony given. We are convinced that no appellate court has ever sustained, or will ever sustain, any such proposition, and for which reason the trial court properly rejected the interposed defense and rendered judgment against appellant for the amount it found to be due.

Wherefore the judgment is affirmed.

The whole court sitting.