AMADEO BARLETTA, Petitioner, v. SUPERIOR COURT OF PUERTO RICO, MAYAGÜEZ PART, ÁNGEL FIOL NEGRÓN, JUDGE, Respondent. AMADEA ITALIA VIDAL, Intervener.

No. 1968.  Argued February 18, 1953.—Decided March 9, 1953.

---

*Amador Ramírez Silva* and *Oscar Souffront* for petitioner. *Enrique Báez García,* for intervener, plaintiff in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The record sent up to this Court shows that Amadeo Barletta is domiciled in Havana, Cuba, and that his exact address in that city is known. Amadea Italia Vidal, the intervener herein, filed a complaint against him in an action of filiation in the Mayagüez Section of the former District Court of Puerto Rico. Barletta, the defendant, could not be located in Puerto Rico and, after the usual procedure, the corresponding edicts were published and copies of the complaint and of the edicts sent by registered mail to the defendant to his address, at No. 23 (*e*) Infanta Street, Havana.

The defendant appeared through his counsel in the Mayagüez Court by a motion to dismiss the complaint, in which he alleged that the latter "does not state facts sufficient to determine a cause of action" and that the court lacked jurisdiction over the person of the defendant because, since it was a personal action and he was domiciled outside of Puerto Rico, he had not been personally served, no property belonging to him in Puerto Rico having been attached.

The Mayagüez Court entered an order denying the motion to dismiss, deciding, in accordance with *Orama et al.* v. *Oyanguren,* 19 P.R.R. 788, that the requirements of personal service and prior attachment of property are not applicable to an action of filiation. The defendant prays in his petition for certiorari that we set aside said order.

■■ The case of *Pennoyer* v. *Neff*, 95 U. S. 714 is generally known. It holds that in purely personal actions, that is, *in personam*, a court lacks jurisdiction over a nonresident who has not been personally served, within the jurisdiction, and that the judgment rendered in said action is wholly null and void and *coram non judice*, because the court did not acquire an effective power over the defendant. Just as pointed out in said case, the doctrine established therein is not applicable to actions or proceedings *in rem* or *quasi in rem*, that is, to those actions involving rights or obligations concerning a specific property located within the state or territorial jurisdiction. Nor is it applicable to those actions, even personal ones, in which there has been an attachment of property the effectiveness of the judgment having to be limited to the value of such property. See the annotation in 94 L. ed. 1167, as to the developments of the doctrine of *Pennoyer* v. *Neff*, *supra*, and see 42 Am. Jur. 71. See also *Huete* v. *Teillard*, 17 P.R.R. 46; *Cosme* v. *Santi*, 37 P.R.R. 710; *Wenonah Military Academy* v. *Antonsanti*, 40 P.R.R. 251 and *Arrarás* v. *Arzuaga*, 53 P.R.R. 680.

Now, in the very case of *Pennoyer* v. *Neff*, *supra*, it is indicated that the rule regarding the necessity of personal service on a person domiciled out of the country, as a jurisdictional condition, is not applicable to an action involving the status of a person. The case of *Orama et al.* v. *Oyanguren, supra*, p. 790, holds that in an action intended to establish the civil status of a person, namely, in an action of filiation against a person domiciled outside of Puerto Rico, as in the instant case, personal notice to a nonresident defendant or the attachment of his property in Puerto Rico is not required in order for our courts to acquire jurisdiction or have a valid and effective judicial power. The opinion recites:

"There is no doubt that the action which may be brought by a child to secure by means of evidence a decree designating his natural father, is a personal right of his, therefore when the

child is in possession of such right it should be governed by the law under which it was acquired and all matters concerning the status of the person should be governed by the law of the country of the person who brings the action. The civil status of citizens is governed entirely by the laws of their own country and can be determined only pursuant thereto. Consequently, although it is a general rule that a court does not acquire jurisdiction over non-residents in personal actions unless they have been summoned personally within the State or possess property therein which has been attached, nevertheless said general rule cannot be applied to cases which involve the civil status of the individual, within which is included an action of filiation, because it being a right originating by conception and birth such right cannot be subjected to the contingency that the alleged father or the legal representatives of his personality may have absented themselves from the country of the individual entitled to acknowledgment, considering that such right is not recognized in all countries and that in some countries evidence of acknowledgment is not admitted for the reason that it is deemed contrary to public order and good custom as there understood. In this connection the Supreme Court of the United States in the case of *Pennoyer* v. *Neff,* 95 U. S., 714, said:

" 'To prevent any misapplication of the views expressed in this opinion, it is proper to observe that we do not mean to assert, by anything we have said, that a State may not authorize proceedings to determine the *status* of one of its citizens towards a non-resident, which would be binding within the State, though made without service of process or personal notice to the non-resident. The jurisdiction which every State possesses to determine the civil *status* and capacities of all its inhabitants involves authority to prescribe the conditions on which proceedings affecting them may be commenced and carried on within its territory. The State, for example, has absolute right to prescribe the conditions upon which the marriage relation between its own citizens shall be created, and the causes for which it may be dissolved. One of the parties guilty of acts for which, by the law of the State, a dissolution may be granted, may have removed to a State where no dissolution is permitted. The complaining party would, therefore, fail if a divorce were sought in the State of the defendant; and if application could not be made to the tribunals of the complainant's domicile in such case, and proceedings be there instituted without personal

service of process or personal notice to the offending party, the injured citizen would be without redress.'

"Therefore, we may conclude by saying that the courts of the country of a person who seeks to establish his civil status have jurisdiction over non-resident defendants, although they may not have been summoned personally therein nor possess property therein, for which reason the lower court did not commit the first error alleged by the appellant."

In *Fordham* v. *Marrero*, 273 Fed. 61, the Circuit Court for the First Circuit affirmed a judgment of this Court (27 P.R.R. 649) and held that a proceeding in the courts of Puerto Rico to establish the status of a plaintiff as a recognized natural child is one in which the judgment rendered is *in rem* or *quasi in rem*, as is a decree of divorce, and that therefore service to the nonresident defendant by publication and by mail, pursuant to the laws of Puerto Rico, is sufficient to give the court jurisdiction over such defendant, even if the latter has not been personally served. See also, regarding the nature *in rem* of an action of filiation, 1 Am. Jur. 436; *Combs* v. *Combs*, 60 S. W. 2d 368; 1 C.J.S. 1149.

The rule laid down in *Orama et al.* v. *Oyanguren, supra,* and in *Fordham* v. *Marrero supra,* has not been modified by this Court. The defendant, petitioner herein, alleges that in *Water Resources Authority* v. *District Court*, 65 P.R.R. 451, this Court, in construing Rule 4 (e) of the Rules of Civil Procedure, infringed the validity of the doctrine laid down in the *Orama* case. We do not agree. The case of *Water Resources Authority* v. *District Court, supra,* was an action, purely personal for damages arising out of an automobile collision. This Court points out that in virtue of the cases decided by this same Court prior to the effectiveness of the Rules of Civil Procedure it had been established that in a personal suit the prior attachment of property of a defendant who, although domiciled in Puerto Rico did not reside in our island when the complaint was filed, was neces-

sary as a condition precedent to substituted service and as a prerequisite to the acquisition of jurisdiction by our courts. It had been determined that "substituted service must be coupled with an attachment of property in all suits *'in personam.'*" (P. 454, *Water Resources Authority* case.) In *Milliken* v. *Meyer*, 311 U. S. 457, the National Supreme Court held that a statute providing for substituted service in a personal action over a domiciliary of Wyoming out of said state, did not violate the due process clause. In the aforesaid case of *Water Resources Authority* v. *District Court*, it was held that under Rule 4(e) of the Rules of Civil Procedure the prior attachment was necessary in those cases required by law and that such provision gave statutory effect to our earlier decisions requiring the prior attachment, the *Milliken* case not being applicable since it was contrary to our law. Obviously, the situation involved in the *Water Resources Authority* case is different from the situation submitted to our consideration in the case at bar. It involved, especially, an action purely *in personam*. The court itself specifically pointed out the following:

·"It should be noted that this restrictive rule has not been applied to suits not strictly in personam—for example, an action for divorce which involves the determination of the status of the parties. See Annotation, 147 A.L.R. 673."

In said case of *Water Resources Authority* v. *District Court*, it is indicated that Rule 4(e) provides that in the cases where an attachment of property of the defendant is required by law in order that the court may acquire jurisdiction, publication shall not be ordered unless said attachment is levied. Said case holds that the phrase "required by law" means in accordance with the judicial decisions of this Court effective at the time of the approval of the Rules of Civil Procedure and that under those decisions, an attachment was required in personal actions in order that the court might acquire jurisdiction over an absentee. In actions of

filiation the judicial decisions of the Court were to the effect that a prior attachment of property of the absentee was not required. Therefore, even under the *Water Resources Authority* case the prior attachment of property of the absent defendant is not necessary in a case such as the instant one. The order of the court *a quo* is congruent with the decisions of this Court, and this is sufficient for us to uphold the validity of its order. Incidentally, this aspect of the Law has been saturated with fictions and mechanical concepts. We must make a realistic analysis that pierces the veil of anachronisms and technical niceties. One of the methods must be that of assaying in the scale of judicial values the social interest and the legitimate necessity of the individual. Fortunately the Supreme Court of the United States has raised the curtain. In a case of great significance as to the procedure of service of complaints on nonresidents, that Court, with unique mastery, has gone beyond the *ratio decidendi* of *Pennoyer* v. *Neff* and has adopted realistic standards as to this field of the law, which reconcile social utility with individual interest. We refer to the case of *Mullane* v. *Central Hanover Trust Co.*, 339 U. S. 306. It involved the liquidation and settlement of accounts of a trust company, a large number of beneficiaries residing outside of the state where the action was prosecuted. The facts were unlike those involved here but the thesis of, and the analysis made by, the Supreme Court are wholly in point.

The opinion delivered by Mr. Justice Jackson reads in part as follows:

"We are met at the outset with a challenge to the power of the State—the right of its courts to adjudicate at all as against those beneficiaries who reside without the State of New York. It is contended that the proceeding is one *in personam* in that the decree affects neither title to nor possession of any *res*, but adjudges only personal rights of the beneficiaries to surcharge their trustee for negligence or breach of trust. Accordingly, it is said, under the strict doctrine of *Pennoyer*

v. *Neff,* 95 U. S. 714, the Surrogate is without jurisdiction as to nonresidents upon whom personal service of process was not made.

"Distinctions between actions *in rem* and those *in personam* are ancient and originally expressed in procedural terms what seems really to have been a distinction in the substantive law of property under a system quite unlike our own. Buckland and McNair, *Roman Law and Common Law,* 66; Burdick, *Principles of Roman Law and Their Relation to Modern Law,* 298. The legal recognition and rise in economic importance of incorporeal or intangible forms of property have upset the ancient simplicity of property law and the clarity of its distinctions, while new forms of proceedings have confused the old procedural classification. American courts have sometimes classed certain actions as *in rem* because personal service of process was not required, and at other times have held personal service of process not required because the action was *in rem.* See cases collected in *Freeman on Judgments,* § § 1517 *et seq.* (5th ed.).

"Judicial proceedings to settle fiduciary accounts have been sometimes termed *in rem,* or more indefinitely *quasi in rem,* or more vaguely still, 'in the nature of a proceeding *in rem.*' It is not readily apparent how the courts of New York did or would classify the present proceeding, which has some characteristics and is wanting in some features of proceedings both *in rem* and *in personam.* But in any event we think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally and which, being primarily for state courts to define, may and do vary from state to state. Without disparaging the usefulness of distinctions between actions *in rem* and those *in personam* in many branches of law, or on other issues, or the reasoning which underlies them, we do not rest the power of the State to resort to constructive service in this proceeding upon how its courts or this Court may regard this historic antithesis. It is sufficient to observe that, whatever the technical definition of its chosen procedure, the interest of each state in providing means to close trusts that exist by the grace of its laws and are administered under the supervision of its courts is so insistent and rooted in custom as to establish beyond doubt the right of its courts

to determine the interests of all claimants, resident or nonresident, provided its procedure accords full opportunity to appear and be heard.

"     .     .  ♦  .     .     .     .     .

"Personal service of written notice within the jurisdiction is the classic form of notice always adequate in any type of proceeding. But the vital interest of the State in bringing any issues as to its fiduciaries to a final settlement can be served only if interests or claims of individuals who are outside of the State can somehow be determined. A construction of the Due Process Clause which would place impossible or impractical obstacles in the way could not be justified.

"Against this interest of the State we must balance the individual interest sought to be protected by the Fourteenth Amendment. This is defined by our holding that 'The fundamental requisite of due process of law is the opportunity to be heard.' *Grannis* v. *Ordean*, 234 U. S. 385, 394. This right to be heard has little reality or worth unless one is informed that the matter is pending and can choose for himself whether to appear or default, acquiesce or contest.

"The Court has not committed itself to any formula achieving a balance between those interests in a particular proceeding or determining when constructive notice may be utilized or what test it must meet. Personal service has not in all circumstances been regarded as indispensable to the process due to residents, and it has more often been held unnecessary as to nonresidents. We disturb none of the established rules on these subjects. . . . . ."

The Supreme Court of the United States went on to hold that, as to nonresidents whose addresses are unknown, publication is sufficient, but as to nonresidents whose addresses abroad are known, service by mail to such addresses is essential in order to comply with the requirements of due process of law. In short, the National Supreme Court ignores the old classification of actions *in rem* or *in personam*, and states that the question must be decided on the basis of the establishment of a balance between the social interest in a determined relation involved in a suit and the individual interest by means of a method of service that guarantees to the de-

fendant an opportunity to be informed, to be heard and to present his objections. Incidentally, the standards enunciated in the *Mullane* case have been specifically adopted by the courts of California in the recent case of *Sevier* v. *Bank of America Nat. Trust & Sav. Ass'n.*, 225 P. 2d 3, in which it is stated that the opinion in the *Mullane* case has eliminated what is purely mechanical, and wherein it is decided the efficacy of a constructive or substituted service does not depend now on whether the action is *in rem* or *in personam*, the courts having the right to determine the interest of all the claimants, resident or nonresident, provided the procedure accords full opportunity to appear and be heard. The *Mullane* case is commented in 36 Cornell L. Q. 541 and in 100 Pa. L. Rev. 305. The case was subsequently cited with approval by the National Supreme Court in *Standard Oil Co.* v. *New Jersey*, 341 U. S. 428, 434.

█ In the light of the holding in *Water Resources Authority* v. *District Court, supra*, the *Mullane* case is not applicable hereto inasmuch as, pursuant to Rule 4 (*e*) of the Rules of Civil Procedure, as construed in the *Water Resources Authority* case, the standards of application are those contained in the decisions of this Court antedating the adoption of the Rules of Civil Procedure. Regardless of the advisability and necessity of amending said Rule 4 (*e*) in harmony with the new realistic doctrine laid down in the *Mullane* case, until said Rule is amended we must abide by the decisions of this Court, entered prior to the Rules. But even under those previous judicial decisions, the court *a quo* acted correctly in dismissing the motion challenging its jurisdiction.

The writ will be discharged.